STATE ex rel JONES, Attorney General, Plaintiff, v. TAYLOR, Circuit Judge, Defendant.

(193 N. W. 56.)

(File No. 5336. Opinion filed April 3, 1923.)

**Municipal Corporations—Attorneys—Mayor — Criminal Law — Mayor Cannot Appear as Counsel for Defendants in Prosecution for Crimes Committed Within City.**

Under Rev. Code 1919, Secs. 6219, 6270, 6279, 6280, 6225, subs. 1, 2, and section 10314, relating to the duties of the mayor of a municipality, it is the plain duty of such mayor to render all the aid within his power for the suppression of crime within his city and the apprehension, prosecution, and

conviction of those guilty of such crime, and to appear as attorney for defendants in prosecutions for crimes committed within the city would be incompatible with his duties as mayor, and a firm of attorneys of which he is a member cannot defend criminal prosecution of one accused of crime committed within the city.

Proceedings for a writ of mandamus by the State, on the relation of Hon. Buell F. Jones, Attorney General, against Alva E. Taylor, as Judge of the Circuit Court of Beadle County in and for the Ninth Judicial Circuit. An alternative writ was issued, and on the intervention of Charles A. Kelley and others leave was granted to show cause why such alternative writ should not be set aside. Order entered.

*James C. McCoy,* State's Attorney, of Huron, *Benj. D. Mintener,* Assistant Attorney General, and *Irving R. Crawford,* Assistant State's Attorney, of Huron, for Plaintiff.

*Karl Goldsmith,* of Pierre, for Intervener.

*Gardner & Churchill,* of Huron, for Defendant.

Plaintiff cited: Ann. Cas. 1917C, 1125, 1918B, 139; 19 L. R. A. (N. S.) 224; L. R. A. (N. S.) 1918F, 1046; 20 L. R. A. (N. S.) 1127; Hosford v. Eno, 41 S. D. 65; State v. Rooker (Ia.), 108 N. W. 645.

POLLEY, J. The Attorney General applied to this court for a writ of mandamus directed to Hon. Alva E. Taylor, as judge of the circuit court of the Ninth judicial circuit of this state, and commanding the said judge to debar and prevent Kelley, Byrnes & Markey, a firm of lawyers engaged in the practice of law in said Beadle county, or either member of the said firm, from appearing or acting as attorneys for the defendants in certain criminal cases now pending in circuit court in said Beadle county.

The ground on which said writ is asked is that Charles A. Kelley, one of the members of said firm of Kelley, Byrnes & Markey, is the present mayor of the city of Huron in said county; that certain of the offenses out of which said criminal actions grew were committed in the city of Huron, or within one mile of the boundary thereof; that by the law of this state it is made the duty of the mayor and police force of said city to aid in the prosecution of said criminal cases; and that therefore the said Kelley and the other members of the said firm, as well, are dis-

qualified to appear or act as attorneys for the defendants in said cases.

An alternative writ was issued, directing the defendant to strike the names of said attorneys from the record in said cases, or that he show cause before this court on the 8th day of March, 1923, why he had not done so.

Upon the service of said writ, defendant forthwith obeyed the mandate thereof by making and entering an order directing that the names of said attorneys be stricken from the record in said criminal cases, as attorneys for the defendants therein, and made immediate return to this court, showing the manner in which such mandate had been obeyed. Immediately upon the making of said order, the said attorneys, on behalf of themselves and the defendants represented by them in said criminal cases, asked leave of this court to intervene and be permitted to show cause why the said order so made by the defendant should not be vacated and set aside, and that they be reinstated and be permitted to act as attorneys in said cases. Such leave was granted, and on the return day named in the alternative writ the matter was presented to the court upon the petition of said attorneys for reinstatement in said cases.

It would seem that as a matter of public policy, and regardless of any statute on the subject, the duties owed to the public by the mayor of a municipality are so absolutely incompatible with the duties of an attorney for a party charged with the commission of a public offense, committed within the jurisdiction of such municipality, that both duties cannot be properly performed by the same person. But the Legislature has not left this matter to any rule of professional ethics nor to any one's sense of propriety. The Revised Code of 1919 contains the following provisions touching upon this matter:

"Sec. 6219. *Membership.* Under the commission form of government, where a city manager is not employed, the board of commissioners shall consist of the mayor and two or four commissioners. The mayor shall be president of the board and shall have a vote upon all questions, but shall not have the right of veto. The members of the board shall be elected from the municipality at large."

"Sec. 6270. *Mode of Appointment.* All appointive officers of a municipal corporation governed by a mayor and common council shall be appointed by the mayor with the approval of the common council, and in other municipal corporations they shall be appointed by a majority vote of the members elected to the governing body, except as provided in the article on city manager."

"Sec. 6279. *Police Powers.* The mayor of every city having a common council, each member of every board of city commissioners and every town marshal shall possess, within the corporate limits and within one mile beyond such limits, all the powers conferred by law upon sheriffs to suppress disorder and keep the peace."

"Sec. 6280. *Mayor Call Assistance.* The mayor of every city shall have power when necessary, to call upon every male inhabitant of the municipal corporation, over the age of eighteen years, to aid in enforcing the laws and ordinances, and to call out any organized militia within the county in which the municipal corporation is situated, in suppressing riots and other disorderly conduct, or carrying into effect any law or ordinance, subject to the authority of the governor as commander in chief thereof."

Subdivisions 1 and 2 of section 6225:

"1. The mayor shall have and exercise all the powers and perform all the duties provided or prescribed by the laws of this state or the ordinances of the city which are not in conflict therewith. He shall be the chief executive officer of the city, shall preside at all meetings of the board of commissioners and shall have general supervision over all departments and officers. In the absence or inability of a commissioner, he shall temporarily take charge of the department of such commissioner. He shall see that all the laws of the city are enforced and that the conditions of the grant of any franchise or privilege are faithfully complied with and performed. He shall grant all licenses or permits, except as such are required by ordinance to be granted by the board of commissioners or by some other department or officer. He shall have under his special charge the supervision of all public buildings of the city, and of all city parks except in cities having a park board, and the lighting of the streets, alleys and public buildings of the city. He shall annually and from time to time give the board of commissioners information relative to the affairs of the city, and

shall recommend for its consideration such measures as he may deem expedient.

"2. The police and fire commissioner shall have under his special charge the enforcement of all police regulations of the city, and general supervision of the police and fire departments and of their officers and employes. He shall have charge of all apparatus and personal property used by these departments. He shall also have charge of the city pound and supervision of the public weigher and measurer."

"Sec. 10314. It shall be the duty of every sheriff and his deputies, every chief of police, town marshal, policeman, constable or other peace officer to enforce the provisions of this article, and if any such officer shall have any knowledge, information or suspicion of any violation of any of the provisions of this article, he shall diligently investigate and secure evidence of the same, and shall, before the proper officer, make and sign complaints or preliminary informations against the person or persons guilty of such violation, and in case it shall be impossibe for any such officer personally to secure any legal evidence of such violation, he shall forthwith report that fact to the state sheriff, together with what knowledge and information he has of the violation of any provision of this article. Every officer who shall fail, neglect or refuse to perform any of the duties and obligations imposed upon him by the provisions of this section shall, upon conviction thereof, be punished by a fine of not less than one hundred and fifty dollars nor more than five hundred dollars or by imprisonment in the county jail for not less than thirty days nor more than six months, or by both such fine and imprisonment, and in addition thereto he shall forfeit his office or position as such officer."

The foregoing provisions of the statute apply to cities under the commission form of government, and Huron is a commission governed city.

Under the provisions of the statute as above set out, it is the plain duty of the mayor of a city to render all the aid within his power in the suppression of crime within such city, and the apprehension, prosecution, and the conviction of those guilty of crime. In order that he may the more effectively carry on such work he is given control of the powerful arm of the police force of the city; but it could not be expected that the police force,

under the control of the mayor, can render efficient assistance in the prosecution of criminals while the mayor himself was engaged in their defense.  We can think of no condition that would give a greater feeling of security to those who are criminally disposed than the knowledge that, if apprehended, they could, upon the payment of a stipulated sum, have the executive arm of the municipality at their disposal, nor do we know of any condition that would go so far to make a municipality a paradise for crooks.  To render the police force useless in the enforcement of the law, it is not necessary that the mayor should actually instruct the members thereof to aid in the escape or acquittal of those accused of crime, nor to suppress or destroy the evidence of crime, nor even that they should remain passive in regard thereto.  The mere fact that the mayor is engaged in defending criminals is sufficient to paralyze the arm of the police force.

That this result has been brought about by existing conditions in the city of Huron is evidenced by the long list of criminal cases now pending in the circuit court in Beadle county, nearly all of which cases originated in the city of Huron.

But nothing herein said is to be construed as passing upon the right of the intervener, Kelley, to hold the office of mayor of the city of Huron, nor of Kelley or his partners in the practice of their profession aside from cases hereinbefore referred to.

The order made by the trial court pursuant to the alternative writ was fully warranted by the showing made by the attorney general.  Proper order in conformity with this opinion has already been made.

Note—Reported in 193 N. W. 56.  See American Key-Numbered Digest, Municipal Corporations, Key-No. 170, 28 Cyc. 466.